UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
F I L E D
JUN 3 0 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-278-GWU

LONNIE JOHNSON,                                              PLAINTIFF,

VS.                            MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

Johnson

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Johnson suffered from moderate obesity, degenerative disc disease at L5-S1 with chronic low back pain, bilateral sacro-iliac sciatica of the hips, bilateral leg/knee pain, possible Schlatter's disease[1] or arthritis, a recent fracture of the non-dominant left wrist and foot rashes. (Tr. 21). While the plaintiff was deemed incapable of returning to his past work, he was believed to be able to engage in a significant number of light and sedentary level jobs in the economy (Tr. 22). Accordingly, his claim for SSI was denied. (Id.).

In 2002, the year prior to the filing of the current SSI claim, the plaintiff was treated for shoulder and knee problems. An MRI of the shoulder showed mild arthritis, but was an essentially normal study. (Tr. 112). An MRI of the left knee done later in the year revealed a small amount of bursal effusion, mild osteoarthritic

---

[1] Osteochondrosis of the tuberosity of the tibia . . . . Dorland's Illustrated Medical Dictionary (27th Ed.), p. 490.

7

changes of the patella, fragmentation of the tibial tuberosity suggestive of Osgood-Schlatter's Disease, and a suggestion of mucinous meniscal degeneration (although not a tear). (Tr. 123).

Exhibit B3 of the record documents that the plaintiff was treated by Dr. Sai Gutti between March and early June, 2003. X-rays of the lumbar spine ordered by Dr. Gutti in March[2] revealed mild first degree anterior spondylolisthesis of L5 onto SI with an associated bilateral pars defects and degenerative change. (Tr. 141). The doctor noted normal motor strength in the extremities and an unremarkable gait, but described tenderness, spasm and paresthesia. (Tr. 139). Other than a proscription against driving heavy equipment (Tr. 139), the exhibit contained no residual functional capacity statements by Gutti.

At this point, the record was reviewed by two medical reviewers. They concluded that Johnson could perform medium level work with restrictions on more than occasional climbing ladders, ropes and scaffolds, stooping and crawling. (Tr. 142-149, 152-157). Neither expert expressed an opinion about Dr. Gutti's statements, as his RFCA opinion was not yet of record.

Exhibits B11F and B12F contained more records from Dr. Gutti, stemming from late June, 2003 to March, 2004. The first of these progress notes indicates

---

[2]The March progress note was not included in the exhibit--although from the "requesting physician" identification on the March 31, 2003 x-rays it is clear that Gutti was seeing Johnson then (Tr. 141).

8

essentially unchanged physical findings despite a recent injection by the physician. (Tr. 174). An MRI of the lumbar spine revealed a mild bulging at L5-SI and osteoarthritic changes of the facet joints at the two lowest levels. (Tr. 165). Tenderness and spasm continued into 2004 despite another injection. (Tr. 167-169). Citing similar clinical findings as well as x-ray, EMG and MRI results, Dr. Gutti opined in April, 2004 that the plaintiff was able to do less than full-time sedentary work with no postural activities and lifting <u>less</u> than 10 pounds (Tr. 175-180). Guttii modified this opinion in another form the following week, indicating that the plaintiff <u>could</u> frequently lift and carry 10 pounds "during a workday." (Tr. 181).

In short, Gutti saw the plaintiff on numerous occasions during a 12 month period within the appropriate time frame. In the medical report and accompanying RFCA form, he cited abnormal clinical examination findings and objective test results. The ALJ rejected this opinion strangely, as being based "more on the claimant's allegations than on objective evidence." (Tr. 19). Moreover, he seemingly rejected it in favor of the findings of a physician who saw the plaintiff on <u>one</u> occasion, evidently ordered not even one x-ray or laboratory test, and was overly skeptical that such testing had been performed–although the existence of such studies was documented in the administrative record.[3]

---

[3]Burns indicated, for example, that "[Johnson] <u>claims</u> that he has had MRIs in the past." (Tr. 182). Given the fact that documentation of abnormal MRI results was already of record (Tr. 165) and Burns would have had no authority to order such <u>specialized</u>

Johnson

Since Consultative Examiner Burns cited no restrictions, however, and the ALJ cited a number of exertional and non-exertional restrictions, he technically did not fully credit Burns' opinion, either. Exactly where these non-exertional restrictions were drawn from is not clear from the record. No medical source couched his opinion in terms of "work at unprotected height <u>over four feet</u>" or mentioned "uneven terrain" or cited "sustained and repetitive overhead work." (Tr. 254). The plaintiff did not admit that he could lift more than 10 pounds or stand or sit more than 15 minutes at a time. (Tr. 249).

The case must be remanded for further consideration.

This the ___30___ day of June, 2006.

_____
G. WIX UNTHANK
SENIOR JUDGE

---

testing himself, it appears that the agency did not provide such records to the consultative examiner.